974 So.2d 187 (2008)
Debra JACKSON and Billy Ray McMahon, Jr., Plaintiffs-Appellants,
v.
BARD ACCESS SYSTEMS, The State of Louisiana through The Louisiana Health Care Authority or Louisiana State University Health Sciences Center, Shreveport, and Celeste Hollands, M.D., Defendants-Appellees.
No. 42,890-CA.
Court of Appeal of Louisiana, Second Circuit.
January 9, 2008.
*188 J. Patrick Hennessy, Patrick A. Stegall, Shreveport, for Appellants.
Ernest Paul Gieger, Jr., Rachel G. Webre, New Orleans, for Appellee, Bard Access Systems.
Jerald Lee Perlman, Baton Rouge, for Appellees, State of Louisiana, Health Care Authority; Louisiana State University Health Sciences Center, Shreveport; and Celeste Hollands, M.D.
Before BROWN, WILLIAMS, and LOLLEY, JJ.
BROWN, Chief Judge.
This product liability and medical malpractice action was filed by the parents of Braimian McMahon, who was born at Louisiana State University Health Sciences Center ("LSUHSC") in Shreveport on January 14, 1999, and died December 18, 1999. Because his gestational age was 26 weeks and he weighed 922 grams at birth, Braimian was placed in the neonatal intensive care unit where he remained for 158 days. His initial diagnoses were, but not limited to (1) respiratory distress, (2) renal insufficiency, (3) sepsis, (4) meningitis, (5) intracerebral hemorrhage, and (6) seizures.
While Braimian was in the neonatal care unit, in April of 1999, Dr. Celeste Hollands inserted a Broviac catheter to provide a stable access site. A few weeks later the tip of the catheter, which was manufactured by defendant, Bard Access Systems *189 ("Bard"), broke off and migrated to Braimian's heart. The migrating part was retrieved through a non-invasive radiological procedure. Braimian died seven months later.
Plaintiffs filed suit on March 30, 2000, alleging that the failed catheter resulted in Braimian's condition weakening, contributing to his death. Furthermore, plaintiffs alleged that the catheter failed because, either when implanted it was defective or because the LSUHSC or Dr. Hollands committed a negligent act, or because of a combination of the two.
The LSU defendants filed an exception of prematurity and as to them, the matter was referred to a medical review panel. On September 6, 2000, in response to Bard's motion to produce, the LSU defendants placed the catheter into the registry of the trial court. The catheter remained in the court record until plaintiffs filed a motion on August 4, 2005, to remove the evidence from the court record. Plaintiffs' motion started a year-long process of trying to establish a protocol, agreeable to all parties, for testing the catheter. The parties finally agreed to a testing protocol. Testing by experts for both plaintiffs and Bard began on September 21, 2006. The LSU defendants waived its presence at testing.
At the conclusion of the initial testing, both experts agreed that additional testing, via electron microscope, would be necessary to determine the cause of the catheter's failure. However, before this additional testing could take place, LSUHSC and Dr. Hollands filed a motion for summary judgment. Plaintiffs and Bard opposed the motion for summary judgment, arguing that it was premature, as the testing had not yet been completed.[1] Although recognizing that testing of the catheter was ongoing, the trial court granted the motion for summary judgment in favor of the LSU defendants, LSUHSC and Dr. Hollands, on the basis that plaintiffs could not sustain their burden of proof "in showing causation of damages." In particular, the trial court said, "[That (based on the supporting affidavits) the child had sustained serious debilitating brain injury before this catheter was put in the vessel, or vein . . ." Plaintiffs then filed a motion for a new trial, which the trial court denied. Plaintiffs have appealed. In brief, Bard joined in plaintiffs' request that this court reverse the ruling of the trial court. We reverse and remand for further proceedings.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria as governs the trial court. Schroeder v. Board of Supervisors of LSU, 591 So.2d 342 (La.1991).
Under La. C.C.P. art. 966(C)(1), a motion for summary judgment is appropriate only after "adequate discovery." Petch v. Humble, 41,301 (La.App.2d Cir.08/23/06), 939 So.2d 499. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702 and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B).
*190 Plaintiffs argue that the granting of the motion for summary judgment was premature because there is conflicting evidence that the catheter did harm Braimian and testing of the catheter had not yet been completed. Plaintiffs further assert that once completed, the results of the testing could be instructive as to fault.
The record contains the affidavit of Dr. Edwards Gustayson.[2] Dr. Gustavson's affidavit states that the failure of the catheter resulted in a blood clot going to Braimian's brain, causing serious harm. Dr. Gustayson used the following unequivocal language: "[T]here could be no other cause for the deterioration of Braimian's condition other than a defect in the catheter and its resultant migration and removal." Dr. Gustayson did not opine that the LSU defendants violated any standard of care.
In his affidavit, Dr. Thomas Butler, an expert for the manufacturer, stated that the breaking of the catheter may have been caused by the negligence of Dr. Hollands and/or LSUHSC. Dr. Butler believed that an inspection' with an electron microscope would be helpful in determining fault.
There are genuine issues of material fact concerning causation. Because the electron microscopic inspection was in progress and may be instructive as to fault, discovery was not completed and the granting of summary judgment was premature. La. C.C.P. art. 966; Adams v. Asbestos Corp. Ltd., 39,952 (La.App. 2 Cir. 10/28/05), 914 So.2d 1177.[3]

Conclusion
For the reasons set forth above, the trial court's judgment granting the motion for summary judgment, dismissing Louisiana State University Health Sciences Center and Dr. Celeste Hollands, M.D., from this action is REVERSED, and the matter is REMANDED to the trial court for further proceedings consistent with this opinion.
NOTES
[1] LSUHSC and Dr. Hollands correctly note that this action had been pending six years at this point; however, we note that the medical review panel did not file its results until 2003.
[2] Dr. Gustayson's affidavit was attached to plaintiffs' opposition to the motion for summary judgment filed by Bard in 2003. It was not attached to their opposition to the motion for summary judgment filed by LSUHSC and Dr. Hollands; however, it was in the record and was referenced in plaintiffs' memorandum in opposition to the motion for summary judgment filed by LSUHSC. Recently, in Louisiana AG Credit, PCA v. Livestock Producers, Inc., 42,072 (La.App.2d Cir.04/04/07), 954 So.2d 883, writ denied, 07-1146 (La.09/14/07), 963 So.2d 1001, this court held that the trial court erred in refusing to consider an affidavit which was originally submitted in opposition to a prior summary judgment motion and incorporated by reference in an earlier opposing memorandum; therefore we find that Dr. Gustayson's affidavit, being part of the record, should be considered in a discussion of the matter at hand.
[3] We are told that the testing has been completed, and a report is now available. In brief, Bard's attorney indicates that the report places blame on the LSU defendants. This assertion is beyond the evidence and is not considered.